UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
LOURDES ARIAS,                              NOT FOR PUBLICATION

                 *Plaintiff*,

                                            **MEMORANDUM AND ORDER**

          v.
                                            18-cv-1296(KAM)
ANDREW M. SAUL,[1]
COMMISSIONER OF SOCIAL SECURITY

                 *Defendant*.
----------------------------------X
**MATSUMOTO, United States District Judge:**

          Lourdes Arias ("plaintiff") appeals the final decision

of the Commissioner of Social Security ("defendant" or

"Commissioner"), which found that plaintiff was not eligible for

disability insurance benefits under Title II of the Social

Security Act ("the Act"), or supplemental security income

benefits under Title XVI of the Act, on the basis that plaintiff

is not disabled within the meaning of the Act.  Plaintiff

alleges that she is disabled under the Act and is thus entitled

to receive the aforementioned benefits.

          Presently before the court is defendant's motion for

judgment on the pleadings (ECF No. 15), and plaintiff's

---

[1]     The plaintiff commenced this action against Nancy A. Berryhill, as
Acting Commissioner of Social Security.  On June 17, 2019, Andrew M. Saul
became the Commissioner of Social Security.  Because Nancy A. Berryhill was
sued in this action only in her official capacity, Andrew M. Saul is
automatically substituted for Nancy A. Berryhill as the named defendant. *See*
Fed. R. Civ. P. 25(d).  The Clerk of the Court shall amend the caption in
this case as indicated above.

[2]     As discussed further below, SSA regulations require disability

memorandum in support of her cross-motion for judgment on the
pleadings (ECF. No 16).  For the reasons stated below,
plaintiff's motion is GRANTED, defendant's motion is DENIED, and
the case is remanded for further proceedings consistent with
this Memorandum and Order.

**BACKGROUND**

## I.  Procedural History

On October 27, 2014, plaintiff Lourdes Arias filed
applications for disability insurance benefits ("DIB") and
supplemental security income ("SSI") benefits.  (ECF No. 1,
Complaint ("Compl.") 1; ECF No. 18, Administrative Transcript
("Tr.") 109, 202-03,205-10, 239.)  Plaintiff's alleged
disability onset date is February 11, 2014, and she claims she
was disabled as a result of osteoarthritis, hypertension,
diabetes with ketoacidosis and depressive disorder.  (*Id.*)

On February 23, 2015, the SSA denied plaintiff's DIB
and SSI applications on the grounds that plaintiff was not
disabled within the meaning of the Act.  (Tr. 122-25.)  On
February 27, 2015, plaintiff requested a hearing before an
Administrative Law Judge ("ALJ").  (*Id.* 138-40.)  On May 9,
2017, plaintiff and her attorney appeared before ALJ Laura
Michaelec Olszewski.  (*Id.* 74-108.)  Vocational expert Molly M.
Kelly also appeared.  (*Id.*)  By decision dated June 21, 2017,
the ALJ determined that plaintiff was not disabled within the

meaning of the Act and was thereby not entitled to benefits. (*Id.* 9-29.)

On June 29, 2017, Plaintiff appealed the ALJ's decision to the Appeals Council.  (Tr. 198-200.)  On January 2, 2018, the Appeals Council denied review of the decision, effectively rendering the ALJ decision final.  (*Id.* 1-8.)  On March 1, 2018, plaintiff filed the instant action in federal court. (*See generally* Compl.)

**II.   Medical and Non-Medical Evidence**

The parties filed a Joint Stipulation of Relevant Facts on December 3, 2018, which the court incorporates by reference. (ECF No. 15-1.)  The court will additionally address the medical opinion evidence, as well as those facts relevant to the decision.

**A. Records Submitted by Plaintiff**

On January 31, 2015, the plaintiff submitted records from Harlem Hospital Center ("HHC"), which included a statement signed by Clarisa Atencio, MD, on October 28, 2014, which stated that plaintiff had been treated since October 17, 2014.  (Tr. 358-65.)  Dr. Atencio's letter stated that plaintiff suffered from panic attacks; depression, fear of elevators, crowds and heights; insomnia; patient has sustained falls during her anxiety attacks and has lost consciousness.  (*Id.* 358.)  Dr. Atencio diagnosed plaintiff with panic disorder with

3

agoraphobia; major depressive disorder, recurrent, moderate;
diabetes mellitus; hypertension; arthritis; status-post gastric
bypass; and syncope.  (*Id.*)  Dr. Atencio also noted that
plaintiff was prescribed the medications paroxetine, clonazepam,
and mirtazapine.  (*Id.*)

On June 25, 2015, plaintiff submitted multiple sets of
medical records from HHC.  (Tr. 287-88, 289-350, 351-52, 353-55,
356-57, 428-557, 618-19, 763-64, 773-77.)  On June 16, 2016,
plaintiff submitted additional records from HHC.  (*Id.* 778-906.)
On April 28, 2017, plaintiff submitted 305 additional pages of
medical records from HHC, many of which were duplicates of
records previously submitted.  (*See id.* 908-1076, 1077-213.)  On
May 8, 2017, plaintiff submitted a Mental Residual Functional
Capacity ("RFC") Assessment completed by Dr. Atencio.  (*Id.*
1214-18.)  On May 19, 2017, plaintiff submitted 304 more pages
of medical records from HHC, many of which, yet again, were
duplicates.  (*Id.* 1219-522.)

At the hearing, the ALJ questioned plaintiff's
representative, Claudia Costa, about the timeliness of the
Mental Assessment form completed by Dr. Atencio and whether it
violated the five-day rule.[2]  (Tr. 78-79.)  Ms. Costa advised

---

[2]     As discussed further below, SSA regulations require disability
claimants to submit any new evidence, or at least tell the hearing office
about it, at least five business days before a hearing before an ALJ, with
certain exceptions.

4

that she had previously requested the RFC but that May 5, 2017 was "first time that we were able to have the psychiatrist actually read the RFC." (*Id.* 79.)  The ALJ announced she would take the matter under advisement. (*Id.*)  In her decision, the ALJ declined to admit either Dr. Atencio's RFC statement or the HHC records submitted on May 19, 2017, ruling that the representative had not shown that she advised the ALJ more than five days before hearing that either exhibit was outstanding or would be submitted, in violation of the regulations. (*Id.* 12-13.)

**B. HHC Treatment Records**

Plaintiff was treated at HHC from January 24, 2012 through the date of the hearing, for both physical and mental disorders. (*See generally* Tr. 287-1522.)  In January 2012, plaintiff was administered an ECG, which indicated that plaintiff had an abnormality with a premature atrial complex[3] and a lengthened QT.[4] (*Id.* 393.)  Plaintiff was treated for diabetes

---

[3]     Atrial premature complexes (APCs) are a common kind of heart arrhythmia characterized by premature heartbeats originating in the atria. Another name for atrial premature complexes is premature atrial contractions. One of the most common symptoms of APCs is heart palpitations or unusual awareness of one's heartbeats. *Healthline*, https://www.healthline.com/health/atrial-premature-complexes.

[4]     Long QT syndrome (LQTS) is a heart rhythm condition that can potentially cause fast, chaotic heartbeats. These rapid heartbeats might trigger a sudden fainting spell or seizure. *Mayo Clinic*, https://www.mayoclinic.org/diseases-conditions/long-qt-syndrome/symptoms-causes/syc-20352518.

mellitus, but had a normal A1C level of 6.0 and 5.7 in 2014, indicating that the condition was well-controlled.  (*Id.* 290, 333, 477.)  Plaintiff was also diagnosed in 2014 with morbid obesity and major depressive disorder, moderate degree.  (*Id.* 305, 334.)  In February 2014, plaintiff was first diagnosed via imaging studies to have spurring of the left epicondyle of her right elbow.  (*Id.* 352.)  In November 2014, a bone density scan indicated that plaintiff had a T-score of 1.9, suffered from osteopenia in her lumbar spine, and was at increased risk of fracture.[5]  (*Id.* 357.)  In October of 2014, Dr. Atencio stated that the plaintiff suffered from panic disorder with agoraphobia; major depressive disorder, recurrent, moderate; diabetes mellitus; arthritis; post gastric bypass; and syncope. (*Id.* 358.)

Plaintiff's records from February through May of 2015 reflect that she suffered from dizziness, shoulder pain, hand spasms, a near syncope episode, and bone loss.  (Tr. 549, 539, 552-55.)  Plaintiff underwent a follow-up ECG in May 2015 to rule out cardiac cause of her syncope episodes.  (*Id.* 774-77.) In August 2015, plaintiff was diagnosed with bursitis in the

---

[5]    Osteopenia and osteoporosis are related diseases. Both are varying degrees of bone loss, as measured by *bone mineral density,* a marker for how strong a bone is and the risk that it might break. A T score of less than 1.0 is a normal finding, a T score of 1.0-2.4 is labeled as osteopenia, and a T score of 2.5 or higher is osteoporosis.   *Osteopenia: When you have weak bones, but not osteoporosis*, https://www.health.harvard.edu/womens-health/osteopenia-when-you-have-weak-bones-but-not-osteoporosis.

right AC joint and prescribed the narcotic medication codeine for pain.  (*Id.* 1035-36.)

Plaintiff first complained of bone pain in September 2015 (Tr. 1329, 741-46), and the record reflects that she complained frequently of bone pain thereafter.  (*Id.* 1172, 966-67, 940, 946.)  On April 17, 2016, a follow-up bone density scan indicated that plaintiff's condition had deteriorated, and her elevated T- score of 2.2 bordered on osteoporosis.  (*Id.* 1006-07.)

On June 29, 2016, Dr. Claricio DeCastro examined the plaintiff and found that she suffered from tenderness at the supraspinatus with shoulder impingement.  (Tr. 951.)  Dr. DeCastro diagnosed plaintiff with moderate tendinosis of the supraspinatus tendon, mild tendinosis of the intracapsular portion of the biceps tendon, and mild AC joint arthrosis.  (*Id.*)  An MRI performed on plaintiff's right shoulder on March 11, 2016, indicated that plaintiff suffered from moderate tendinosis of the supraspinatus tendon, mild tendinosis of the intracapsular portion of the biceps tendon, mild acromioclavicular joint arthritis, and minimal subacromial bursitis.  (*Id.* 1000-01.)  On April 26, 2016, plaintiff presented pain in her right shoulder, radiating to her neck, and associated with muscle spasm and cramping.  (*Id.* 969-70.)  Plaintiff complained that she could not brush her hair, nor

could she carry a gallon of milk (approximately 8 pounds) in her right dominant hand.  (*Id.*)  Subsequent visits indicate similar findings.  (*Id.* 1037-41, 952-53, 940, 942-43.)

There is no medical source statement in the file with regard to plaintiff's physical limitations.  It does not appear that there was a consultative examination scheduled for the plaintiff by the ALJ, nor does it appear that the representative, who had represented the plaintiff for more than two years at the time of the hearing, ever requested one.  The non-expert, single decision maker, D. Nieves, stated that the claimant did not describe how her symptoms limit her functioning, and therefore, her credibility could not be assessed.  (Tr. 113.)  Moreover, D. Nieves made no findings as to plaintiff's exertional limitations, despite finding that plaintiff could return to her past relevant work.  (*Id.* 109-17.)

### C. Medical Opinion of Treating Psychiatrist Clarisa Atencio, MD

On May 5, 2017, a "Mental Residual Functional Capacity Assessment" form was completed by Dr. Atencio.  Although the form was scanned into plaintiff's file, and listed as Exhibit 21F, the ALJ refused to consider the document because it was not timely submitted.  (Tr. 1215-18, 12-13.)  Dr. Atencio stated that plaintiff had been treating with her since October 2014.  (*Id.* 1215.)  Dr. Atencio diagnosed plaintiff with major

depressive disorder, recurrent; panic disorder with agoraphobia;
hyperparathyroidism; and Type 2 diabetes.  (*Id.*)  She opined
that plaintiff had a GAF score of 55 and a "fair" prognosis.
(*Id.*)[6]  She noted that plaintiff has physical conditions, which
contributed to mental impairments and explained that plaintiff
has vertigo, chronic bone pain, and episodes of falls.  (*Id.*)
Dr. Atencio states that plaintiff was treated with medication,
supportive therapy, and psychoeducation.  (*Id.*)  Dr. Atencio
projected that plaintiff's impairments would last more than
twelve months, and determined that plaintiff was not a
malingerer.  (*Id.*)

Dr. Antencio opined that, with respect to plaintiff's
understanding and memory, she suffered from marked limitations
in her ability to remember locations and work-like procedures,
and to understand and remember detailed instructions, as well as
moderate limitations in the ability to understand and remember
very short and simple instructions. (Tr. 1216.)  Plaintiff's
other marked limitations included the ability to maintain
attention and concentration for extended periods, to perform
activities within a schedule, maintain regular attendance, be

---

[6]     GAF, or Global Assessment of Functioning, is a scoring system that
mental health professionals use to assess how well an individual is
functioning in their daily lives.  The scores range from 0 to 100, with 100
representing superior functioning. Doctors take into consideration how much
difficulty a person has in their daily life with social, occupational,
school, and psychological functioning before assigning a score.  *Healthline*,
https://www.healthline.com/health/gaf-score.

punctual within customary tolerances, and sustain an ordinary routine without special supervision. (*Id.* 1216-17.) Dr. Atencio further opined that plaintiff was extremely limited in her ability to travel to unfamiliar places and use public transportation, and had a markedly limited ability to tolerate normal levels of stress. (*Id.* 1218.) Dr. Atencio also opined that plaintiff would need to miss five days of work per month, and could not work on a regular and sustained basis. (*Id.*)

### D. Medical Opinion of State Agency Psychologist E. Selesner, Ph.D.

On February 20, 2015, E. Selesner, Ph.D., a State agency psychological consultant, reviewed the medical evidence of record and completed a psychiatric review technique form. (Tr. 112.) Dr. Selesner determined that plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and had no episodes of decompensation. (*Id.*) Dr. Selesner also assessed plaintiff's mental RFC, and determined that plaintiff was capable of following supervision and relating appropriately with coworkers, and performing tasks in a setting in which she would not have frequent contact with the public. (*See id.* 114-16.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the

court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational

background, age, and work experience.'" *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the
Commissioner, a five-step sequential evaluation process is used
to determine whether the claimant's condition meets the Act's
definition of disability. *See* 20 C.F.R. § 404.1520. This
process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix
> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in his prior type of
> work, the Commissioner must find him disabled if (5)
> there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation
omitted); *see also* 20 C.F.R. § 404.152(a)(4). At any of the
previously mentioned steps, if the answer is "no," then the
analysis stops and the ALJ must find that claimant is not
disabled under the Act.

During this five-step process, the Commissioner must
consider whether "the combined effect of any such impairment . .
. would be of sufficient severity to establish eligibility for
Social Security benefits." 20 C.F.R. § 404.1523. Further, if
the Commissioner does find a combination of impairments, the
combined impact of the impairments, including those that are not

severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  However, if the record before the court provides

"persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *See, e.g.,* *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## **DISCUSSION**

### **I.   The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 11, 2014.  (Tr. 15.)  At step two, the ALJ found that the plaintiff suffered from the severe impairments of osteoarthritis, depression, anxiety disorder, and obesity.  (*Id.*)  The ALJ considered the plaintiff's conditions of diabetes mellitus, hyperlipidemia, and hypertension, but found them to be non-severe.  (*Id.*)

At step three, the ALJ determined that from February 11, 2014, through the date of the hearing, plaintiff did not have an impairment or combination that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. § 404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.926), although the ALJ considered Listings 12.04, 12.06 and

1.04.  (Tr. 15-18.)  The ALJ found that as of the hearing date,
plaintiff would be capable of performing medium work, in a low
stress environment, with the following limitations:

- Lift and/or carry 50 pounds occasionally, and 25
  pounds frequently;
- Sit for six hours in an eight-hour workday;
- Stand and/or walk for six hours in an eight-hour
  workday;
- Occasionally climb ramps and stairs;
- Never climb ladders or scaffolds;
- Occasionally balance and stoop;
- Never kneel, crouch, or crawl;
- Avoid reaching overhead with the right arm;
- Frequently reach in all other directions, with no
  restrictions on the left arm;
- Push and pull up to 50 pounds occasionally, and 25
  pounds frequently;
- Occasional use of judgment;
- Occasional decision making;
- Occasional changes in the work setting;
- Simple, routine, and repetitive tasks; and
- Occasional interaction with supervisors, coworkers,
  and the public.

(*Id.* 18-22.)

       In determining the RFC, the ALJ stated that she did
not consider the tardily-filed opinion of Dr. Atencia, and gave
"great weight" to the opinion of Dr. Selesner.  (Tr. 12-13, 21.)
With regard to the plaintiff's exertional limitations, there is
no medical source cited.  (*See generally id.* 12-24.)

       At step four, the ALJ found that plaintiff could
return to her past relevant work as a jewelry packer.  (Tr. 22.)
At step five, in the alternative, the ALJ determined that
plaintiff could perform other jobs that exist in significant

numbers in the national economy, including janitor, production
helper, and hand packager.  (*Id.* 23, 99.)  As a result, the ALJ
found that plaintiff was not disabled.  (*Id.* 24.)

Plaintiff challenges the ALJ's determination on
several grounds.  First, plaintiff argues the ALJ should not
have given "great weight" to the opinion of Dr. Selesner,
arguing that he might not be qualified.  (ECF No. 16, Pl.'s Mem.
3.)  Plaintiff further contends that the ALJ erred in not
obtaining medical expert testimony regarding plaintiff's
physical limitations.  (*Id.* 3-4.)  Lastly, plaintiff asserts
that the ALJ failed to develop the record because there was no
consultative examination sought with regard to the plaintiff's
physical impairments.  (*Id.* 4-6.)

## II.   **The ALJ Did Not Err Regarding Dr. Selesner's Opinion**

Plaintiff argues that the ALJ erred in giving great
weight to the opinion of Dr. Selesner, in part, because there is
no indication that Dr. Selesner is a physician.  (*See* Pl.'s Mem.
3.)  But plaintiff misses the significance of Dr. Selesner's
designation by title code "38" (*see* Tr. 116), which, pursuant to
the Program Operations Manual System (POMS), indicates that Dr.
Selesner is a psychologist.  *See* POMS DI 24501.004, Medical
Specialty Codes.  Although not a physician, Dr. Selesner is a
qualified expert whose opinions should be properly considered in
matters relating to mental impairments.

17

Additionally, plaintiff errs by implying that there was a contradictory opinion presented.  The opinion of Dr. Selesner was the only medical opinion in the file because plaintiff did not timely submit Dr. Atencio's Mental RFC Assessment, in violation of the "five-day rule," and without "good cause" shown.  Plaintiff had a duty to advise the SSA of outstanding treatment sources in a timely manner.  SSA regulations under 20 C.F.R. §§ 404.935 and 416.1435 provide that a plaintiff should inform the SSA about evidence or submit evidence no later than five business days before the hearing. In adopting the five-day rule, the SSA specifically sought to "appropriately balance the twin concerns of fairness and efficiency." *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016).  The SSA contemplated that the rule would "ensure claimants have the benefit of a fully developed record at the time our ALJs conduct their hearings." *Id.*  On the other hand, "[t]o say that the ALJ was required to admit and consider [tardily-filed] evidence despite the fact that it was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with."  *Arthur L. v. Berryhill*, No. 518CV304FJSDJS, 2019 WL 4395421, at *4 (N.D.N.Y. June 6, 2019),

18

*report and recommendation adopted sub nom. Arthur L. v. Saul*, No. 518CV304FJSDJS, 2019 WL 3213229 (N.D.N.Y. July 17, 2019).

In this instance, neither plaintiff nor her representative took steps to notify the ALJ that there were records outstanding.  Plaintiff's attorney entered an appearance in the matter two years prior to the hearing.  Counsel did not act diligently to inform the ALJ about treatment sources contradictory to Dr. Selesner's opinion, and accordingly, those records were properly excluded.  Because Dr. Selesner was a qualified expert, and his opinion was present in the record and stood as the only opinion timely submitted at the time of plaintiff's hearing, the ALJ properly considered and assigned "great weight" to the opinion.

## III.  The ALJ Failed to Develop the File

As noted above, there is no indication in the record that plaintiff was ever requested to attend a consultative examination for either her mental impairments or physical impairments.  Further, no medical source statement was sought and introduced in a timely manner with regard to either plaintiff's physical or mental impairments.  Thus, the only opinion evidence in the file was the opinion of the non-examining state-agency psychologist who opined solely as to plaintiff's mental impairments.  The record is bereft of a medical opinion regarding plaintiff's exertional limitations,

despite the fact that she suffered from at least one severe
physical impairment.

Though plaintiff failed to provide medical source
opinions, or request a consultative examination, this did not
negate the ALJ's concurrent obligation to develop the record.
According to the SSA regulations, the Commissioner must "make
every reasonable effort" to assist the claimant in developing a
"complete medical history."  20 C.F.R. § 404.1512(d).
Furthermore, "[i]t is the rule in our circuit that the ALJ,
unlike a judge in a trial, must [her]self affirmatively develop
the record in light of the essentially non-adversarial nature of
a benefits proceeding.  This duty . . . exists even when, as
here, the claimant is represented by counsel." *Pratts v.
Chater,* 94 F.3d 34, 38 (2d Cir. 1996) (internal citations and
quotations omitted).  Thus, if the claimant's medical record is
inadequate, it is "the ALJ's duty to seek additional information
from the [treating physician] *sua sponte."  Schaal,* 134 F.3d at
505; *see Rosa,* 168 F.3d at 79 ("[A]n ALJ cannot reject a
treating physician's diagnosis without first attempting to fill
any clear gaps in the administrative record.").  "[U]nlike a
judge in a trial, [an ALJ] must . . . affirmatively develop the
record [on behalf of the claimant]." *Lamay v. Comm'r of Soc.
Sec.,* 562 F.3d 503, 508-09 (2d Cir. 2009) (quoting *Tejada v.
Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)).  The ALJ must

20

"scrupulously and conscientiously probe into, inquire of, and
explore for all the relevant facts." *Hankerson v. Harris*, 636
F.2d 893, 895 (2d Cir. 1980) (internal quotation marks omitted).

The plaintiff's medical record in this matter was
lengthy and contained objective evidence that plaintiff suffered
from bone pain associated with bone loss, as well as
osteoarthritis and tendonitis in her right dominant shoulder.
Additionally, multiple references were contained in the record
that plaintiff suffered from episodes of dizziness and falls.
Though the ALJ addressed the issue of plaintiff's
osteoarthritis, she did not address the issue of plaintiff's
bone loss and syncope episodes, nor did she explain how the raw
medical evidence could be interpreted to support a finding as to
how much plaintiff was capable of lifting, carrying, pushing or
pulling.  The ALJ should have obtained a medical opinion from a
qualified source, as her RFC could not stand if unsupported by
at least one medical opinion*.  See Goble v. Colvin*, No. 15-CV-
6302 CJS, 2016 WL 3179901, at *7 (W.D.N.Y. June 8, 2016) ("[A]n
RFC determination must be supported by a competent medical
opinion.").

The Commissioner argues "there was scant evidence of
any significant abnormal examination findings or treatment
history."  (Def.'s Reply Mem. 4.)  This argument misses the
point, however.  The record is rife with objective medical

findings documenting that plaintiff suffered from bone loss, fainting spells, and osteoarthritis.  The question as to whether those abnormal physical findings are "significant" can only be answered by a qualified medical expert.  It was not within the ALJ's non-expert scope of discretion to interpret those raw medical findings and deem them not significant.  This is precisely why the ALJ should have obtained a medical source statement, called a medical expert to testify, or scheduled a consultative examination.  *See Pettaway v. Colvin*, 12-CV-2914 (NGG), 2014 WL 2526617, at *5 (E.D.N.Y. June 4, 2014) ("[D]istrict courts within this Circuit have routinely recognized that ALJs have an affirmative duty to request medical source statements from a plaintiff's treating sources in order to develop the record, regardless of whether a plaintiff's medical record otherwise appears complete.") (citation omitted); *see also Lazo-Espinoza v. Astrue*, 10-CV-2089 (DLI), 2012 WL 1031417, at *13 (E.D.N.Y. Mar. 27, 2012) ("[T]he ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.").

Here, the record is bereft of medical opinions by any qualified medical source regarding plaintiff's limitations.  The ALJ, faced with a medical record that documented at least one severe impairment, was obligated to obtain opinion evidence to

fill in the gaps in the record.  Her failure to do so warrants remand of this case with the direction that the ALJ obtain medical source statements from treating physicians and/or schedule plaintiff to attend a consultative physical and mental examination.

**IV.   The ALJ's RFC is Not Supported By Substantial Evidence**

        "In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations." *Reisinger v. Comm'r of Soc. Sec.*, No. 7:16-CV-428 (ATB), 2017 WL 2198965, at *8 (N.D.N.Y. May 18, 2017) (citing 20 C.F.R §§ 404.1545, 416.945).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

Here, the ALJ failed to cite any valid medical facts
to support her conclusion that plaintiff is capable of
performing work at the medium exertional level.  Medium work is
work that requires an individual to lift up to 25 pounds
frequently (up to 5 and half hours a day), and to lift 50
pounds, which constitutes one third of her total body weight,
occasionally (up to 2 and half hours a day).  20 C.F.R. §§
404.1527, 416.967.  At the time of hearing, plaintiff was a 59
year-old woman, who stood at five feet and four inches tall and
weighed 160 pounds.  (Tr. 109.)  She was, by objective testing,
found to suffer from weak bones as well as osteoarthritis in her
dominant shoulder.  Despite those limitations, the ALJ found
that the plaintiff was capable of lifting 50 pounds.

In explaining her reasoning, the ALJ notes the fact
that the Plaintiff had been diagnosed with osteopenia, and had
been found to suffer from arthritis in her right shoulder as
well as documented tenderness in the shoulder, impingement of
the shoulder, and tenderness of the right elbow.  (Tr. 19.)  She
then notes that, despite those findings, plaintiff had been
frequently observed to have normal gait and intact motor
strength.  (*Id.*)  But the ALJ ignores the fact that the record
reflects plaintiff could not lift more than 8 pounds with her
right arm.  (*Id.* 969-70.)  Nor is it clear why the ALJ
considered plaintiff's ability to walk (which by definition

involves the use of the lower extremities), to negate valid medical findings that plaintiff has an impairment in her upper extremity.

The ALJ noted that the plaintiff's treatment consisted only of medication, and that there was no evidence of progression toward more aggressive treatment modalities.  (Tr. 21.)  But the record does not indicate that plaintiff's physicians believed there were more aggressive treatment modalities to treat plaintiff's condition.  Any assumption that additional or more aggressive treatments existed for plaintiff's condition was pure conjecture on the ALJ's part, and merely underscores the necessity of medical expert opinion evidence. *See Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391-FPG, 2020 WL 95421, at *4 (W.D.N.Y. Jan. 8, 2020) ("[G]iven the lack of any competent medical opinion, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by [plaintiff's] impairments."); *Goble*, 2016 WL 3179901, at *6 ("[T]he ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence."); *Kneeple v. Colvin*, 14-CV-33-JTC, 2015 WL 7431398 at *6 (W.D.N.Y. Nov. 23, 2015) ("Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as

those set out in 20 C.F.R. § 404.1567[(a)-(e)] . . . the
Commissioner may not make the connection himself.") (citation
and internal quotation marks omitted); *see also, Hazlewood v.
Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, at *5
(N.D.N.Y. Aug. 6, 2013) ("The ALJ is not qualified to assess a
plaintiff's RFC on the basis of bare medical findings, and where
the medical findings in the record merely diagnose a plaintiff's
impairments and do not relate those diagnoses to a specific RFC,
an ALJ's determination of RFC without a medical advisor's
assessment is not supported by substantial evidence.") (citation
and footnote omitted).

   The court finds the RFC is unsupported by any valid
medical opinion and is inconsistent with the medical record as a
whole.  Accordingly, the case is remanded.

## CONCLUSION

For the reasons stated above, plaintiff's cross-motion for judgment on the pleadings is GRANTED in part, and defendant's motion for judgment on the pleadings is DENIED. The court remands this action for further proceedings consistent with this Memorandum and Order. Specifically, the ALJ shall obtain medical source statements from the treating physicians and mental health providers, and/or schedule plaintiff to attend a consultative examination, and provide a proper RFC. The clerk of court is respectfully directed to close this case.

**SO ORDERED.**

Dated:     Brooklyn, New York
           April 25, 2020

                              _____
                                        /s/
                              Hon. Kiyo A. Matsumoto
                              United States District Judge